Roger BOLEY, individually and on behalf of all others in the State of North Carolina similarly situated, Plaintiff–Appellant,

and

Clinton Null, Plaintiff,

v.

Jesse BROWN, Secretary of Veterans Affairs; Kenneth McDonald, or his successor, Director, Winston–Salem Regional Office of the Veteran's Administration, Defendants–Appellees.

No. 93–1067.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1993.

Decided Nov. 15, 1993.

Philip A. Baddour, Jr., Baddour, Parker, Hine & Wellons, Goldsboro, NC, argued (Chloe J. Wellons, Baddour, Parker, Hine & Wellons, on brief), for plaintiff-appellant.

Malcolm Lay Stewart, Civ. Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart E. Schiffer, Acting Asst. Atty. Gen., James Russell Dedrick, Acting U.S. Atty., Mark B. Stern, Civ. Div., on brief), for defendants-appellees.

Before RUSSELL, Circuit Judge, SPROUSE, Senior Circuit Judge, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

GARBIS, District Judge:

In this case Major Roger Boley ("Boley" or "Appellant") seeks a determination that he and a putative class should be relieved from liability to indemnify the Department of Veterans Affairs ("VA") for guarantee payments on VA loans. Specifically, Boley contends that:

(1) The failure of the VA to meet the North Carolina law requirements for a deficiency judgment precludes the VA from asserting a right to indemnification.

(2) He received inadequate notice of the pertinent foreclosure proceedings and was, therefore, deprived of property without due process of law.

(3) The suit should be certified as a class action.

The district court denied class certification and granted summary judgment to the VA 144 F.R.D. 305.[1] For the reasons stated herein, we affirm.

### I.

Boley is an Air Force veteran who, in 1983, financed his purchase of a home in Wayne County, North Carolina with a VA-guaranteed home loan. The application for a loan guarantee, signed by Boley, contained an indemnity agreement obligating Boley to repay any guaranty claim which the VA might be required to pay to the lender. On July 10, 1987, Boley sold the home to J. Faron Cooke ("Cooke"), who assumed the loan. Boley did not obtain a release of liability from the VA.[2] Thereafter, as pertinent to this case, Boley moved to Michigan.

In November of 1987, Cooke defaulted on the loan. The private lender filed a foreclosure action on May 9, 1988. A hearing on the foreclosure was held June 9, 1988. Boley had received no notice of the hearing. On June 16, 1988 the VA mailed Boley a letter at the address of the subject property in Wayne County advising him that foreclosure was probable as a result of Cooke's default. The letter was forwarded to Boley, who received it on June 23, 1988. Boley contacted a VA representative by telephone on June 24 and was informed that the foreclosure sale was scheduled for June 29, 1988.

Boley did not attend the foreclosure sale and took no further action regarding the foreclosure. The foreclosure sale was held as scheduled. The property was sold for $54,889, leaving a deficiency of $12,301.21. The VA paid this amount to the lender and sought to recover this amount from Boley pursuant to the indemnity agreement. Boley paid the $12,301.21 to the VA when it was demanded. He then filed this suit to recover the amount paid.

### II.

The VA provides assistance to veterans by guaranteeing home loans made to veterans by private lenders. 38 U.S.C. §§ 3701–3751. Lenders typically will not require a down payment on loans guaranteed by the VA. Any amounts paid by the VA to the holder of the note on account of a veteran's liabilities "constitute a debt owing to the United States" by that veteran. 38 C.F.R. § 36.4323(e). A purchaser of a VA-guaranteed property may assume the indebtedness as did Cooke in this case. The veteran, however, is not released from liability unless the veteran obtains a release.[3]

In the event of default on a VA-guaranteed loan, the VA orchestrates the foreclosure proceedings. The lender is required to give the VA thirty days' notice before foreclosing. 38 C.F.R. § 36.4317. The VA then has 15 days to instruct the lender on how to proceed. 38 C.F.R. § 36.4324. The lender conducts the foreclosure in accordance with state law where the property is located. *See* 38 U.S.C. § 3720(a)(6); 38 C.F.R. §§ 36.4319, 36.4320. If a deficiency remains after the foreclosure sale, the VA reimburses the lender up to the amount of the guaranty. 38 C.F.R. § 36.4321.

The VA can recover the guaranty payment from the veteran in two ways: (1) as a subrogee the VA can pursue any causes of action the lender has against the defaulting party under the appropriate state's laws, 38 C.F.R. § 36.4323(a), or, (2) the VA can pursue its independent rights under the indemnity contract with the veteran, 38 C.F.R. § 36.4323(e).

North Carolina law provides that notice of a foreclosure hearing shall be given to:

(1) Any person to whom the security interest instrument itself directs notice to be sent in case of default.

---

1. Formally, the Defendants were the Administrator and the Director of the Winston–Salem Regional Office of the Veteran's Administration. The Defendants are, herein, collectively referred to as "the VA."

2. The VA's regulations provide a mechanism for the veteran to substitute the purchaser of the property in the indemnity agreement and, thus, release the veteran from any potential liability. *See* 38 C.F.R. § 36.4323(f). Boley did not seek such a release.

3. See 38 C.F.R. § 36.4323(f).

(2) Any person obligated to repay the indebtedness against whom the holder thereof intends to assert liability therefor, and any such person not notified shall not be liable for any deficiency remaining after the sale.

N.C.G.S. §§ 45–21.16(b)(1) and (2). The statutes further require that:

The notice of sale shall be mailed by first-class mail at least 20 days prior to the date of sale to each party entitled to notice of the hearing provided by G.S. 45–21.16 whose address is known to the trustee or mortgagee and in addition shall also be mailed by first-class mail to any party desiring a copy of the notice of sale who has complied with subdivision (5) below. Notice of the hearing required by G.S. 45–21.16 shall be sufficient to satisfy the requirements of notice under this section provided such notice contains the information required by G.S. 45–21.16A.

N.C.G.S. § 45–21.17.

In this case, Boley, as an indemnitor whose obligation remained even though the mortgagee's rights were extinguished, did not receive notice of the foreclosure hearing.[4] The parties agree that because the VA did not comply with North Carolina's notice provisions the VA cannot proceed on a subrogation theory.

Boley argues that the VA's failure to comply with the North Carolina notice provision prevents the VA from pursuing its rights under the indemnity agreement. In sum, Boley argues that the North Carolina notice provision pertinent to the VA's subrogation rights should be incorporated, as a matter of federal common law, into the principles governing its indemnification rights.

The VA disagrees and, relying on *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), argues that the VA's indemnification rights are controlled by federal law and independent of the VA as distinct from its subrogation rights which are

controlled by state law. The VA contends that its right to indemnification stems from a contract formed in the administration of a nation-wide federal program and federal law governs the rights of the United States under nation-wide federal programs. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979).

In *Shimer*, the Supreme Court held that federal (VA) regulations determining credits and defining bid procedures were intended to remedy exactly the same abuses as a Pennsylvania deficiency judgment statute. The Court recognized the completeness of the federal scheme and held that it displaced the inconsistent state law.

The case at Bar is distinguishable from *Shimer*. Here, the state law does not conflict with any federal regulation.[5] While the VA regulations provide direction for giving notice to the VA and the mortgagee, *see* 38 U.S.C. § 3720(a); 38 C.F.R. § 36.4319, .4320, .4321, there is no direction for giving notice to a veteran when, as presented here, the veteran has sold the VA-financed property but has not obtained a release from liability. Thus, *Shimer* is not directly controlling. *Shimer* and lower court decisions construing it, however, provide instructive guidance.

As noted above, there are two methods by which the VA can recover guaranty payments from veterans—subrogation and indemnification. 38 C.F.R. § 36.4323(a), (e). These schemes have been held to be independent. *See United States v. Davis*, 961 F.2d 603 (7th Cir.1992); *Vail v. Derwinski*, 946 F.2d 589 (8th Cir.1991); *Carter v. Derwinski*, 987 F.2d 611 (9th Cir.1993) (slip opinion) (*en banc*) (overruling *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir.1990)).

When pursuing its subrogation rights the VA, axiomatically, must stand in the shoes of the private lender and meet any applicable state law requirements for recovery. In sharp distinction, indemnity is an

---

**4.** Boley did receive notice of the foreclosure sale five days prior to the actual sale.

**5.** In *Shimer*, the Pennsylvania law requiring a judicial determination of value before pursuing a deficiency judgment was directly in conflict with

the federal regulations directing the VA to establish the fair market value, apply that to the loan amount outstanding, and then pursue the deficiency amount.

independent right arising under federal law. The VA regulations provide a comprehensive scheme under which the VA can pursue its rights and the veteran can seek to waive indemnity or compromise the debt.[6] The VA's right to indemnification is a federal right given as part of a nation-wide federal program that should not be affected by state law. *See United States v. Vallejo*, 660 F.Supp. 535, 537 (W.D.Wash.1987).

We decline to accept the argument that the VA's federal law right to indemnity is limited by whatever requirements may be imposed by state law on a lender (and, thus, on the VA when it acts as a subrogee) in seeking a deficiency judgment. *See Vail v. Derwinski*, 946 F.2d 589 (8th Cir.1991) (holding Michigan's antideficiency statute inapplicable to the VA's indemnity agreement). We agree with the district court that the North Carolina state law requirements are not incorporated into the VA's federal right of indemnification.

### III.

■ Boley contends that he was deprived of property without due process of law because he received no notice of the foreclosure hearing and only five days' notice of the foreclosure sale.

Before a federal agency may take action affecting a constitutionally protected interest in life, liberty or property, it must provide "notice reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to be heard." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, if Boley had a property interest at stake, he was entitled to notice and a meaningful opportunity to be heard.

We conclude that Boley had a legally protected property interest in the foreclosure proceedings, including the hearing and the sale, by virtue of his obligations under the indemnity agreement. Boley had an interest in trying to avoid a determination that fore-

closure was necessary at the foreclosure hearing and in seeing that fair value was received for the property at the foreclosure sale. Accordingly, Boley was entitled to notice of the foreclosure proceedings "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] opportunity to [protect his interests]." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. *See also Vail*, 946 F.2d at 594 (holding that "the VA must make a good faith attempt to provide reasonable personal notice to the indemnitor of the foreclosure sale before it can obtain a recovery under its indemnity contract").

■ Having held that Boley, as a third party indemnitor, is entitled to notice of the foreclosure proceedings, we must now examine, in turn, the notice provided by the VA's regulations and the sufficiency of the notice Boley actually received.

The VA regulations, as currently written, do not provide for any notice of the foreclosure proceedings, either the foreclosure hearing or the foreclosure sale, to a third party liable to the VA under an indemnity agreement. The lack of any provision for notice in the regulations renders this portion of the VA's regulations constitutionally insufficient. Nevertheless, the constitutional inadequacy of the regulations does not require, or in this case result in, the relief sought by Boley because there was no actual injury. For, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). "Where the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities.... Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Id.* at 263, 98 S.Ct. at 1052.

---

**6.** Under the federal scheme, veterans receive substantial protections in the event of default

that are not provided to other borrowers.

■ In this case, Boley has not presented evidence to establish that it would have made any difference if he had received reasonable notice of the foreclosure hearing and more than five days notice of the foreclosure sale.[7] Boley, in fact, took no pertinent action in response to the notice that he received. More significantly, Boley has presented no evidence which suggests, much less could establish, that if additional notice had been provided he could have, or would have, taken any action to avoid or reduce the guaranty payment made by the VA which triggered his indemnity obligation. Indeed, it is appropriate to note that even after the sale Boley did not take action available to him. He could have filed an "upset bid" for up to ten days after the reporting of the foreclosure sale, but did not do so. Such an action would have compelled a resale of the property. *See* N.C.G.S. § 45–21.27.

The record establishes that, in this case, the absence of notice of the foreclosure hearing and the failure to give more than 5 days notice of the foreclosure sale, was unfortunate but of no substantive significance. Boley has not established entitlement to the relief sought—the avoidance of liability on the indemnity agreement.

### IV.

■ Boley sought to certify the case as a class action, with the class defined as:

All veterans or widows of veterans or other individuals eligible for home loan guarantees or insurance provided pursuant to Title 38, United States Code, Chapter 37, against whom a claim for a deficiency judgment has been or will be made by the United States, pursuant to 38 C.F.R. 36.-4323(e) or pursuant to a written indemnity agreement, which claim has been or will be generated because of a claim paid by the United States to a lender who submitted such claim to the United States because of a foreclosure in North Carolina in which notice was not given in accordance with N.C.G.S. 45–21.16(b)(1) and (2) and N.C.G.S. 45–21.17.

A class action must satisfy four requirements: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interest of the class. Fed.R.Civ.P. 23(a).

■ The district court found that the typicality and adequate representation requirements were not met. These determinations are within the discretion of the district court and will be reversed only upon a showing of abuse of that discretion. *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir.1990).

In this case, the district judge did not abuse his discretion in denying class certification. Even though we conclude that the VA regulations should have provided for notice to members of the putative class, the determination of whether adequate notice was actually given and, if not, whether any harm resulted, is dependent upon consideration of the unique circumstances pertinent to each class member.

### V.

For the foregoing reasons, the Judgment of the district court is hereby affirmed.

*AFFIRMED.*

7. Without evidence that the absence of adequate notice had any actual effect on Plaintiff, he has not shown a right to recover even nominal damages. *See Carey,* 435 U.S. at 263, 266–67, 98 S.Ct. at 1052, 1053–54.