John E. DONOVAN, Appellant,

v.

Togo D. WEST, Jr. Secretary of
Veterans Affairs, Appellee.

No. 95–519.

United States Court of Veterans Appeals.

Oct. 8, 1998.

John E. Donovan, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Henry Cohn were on brief for appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, veteran John E. Donovan, now pro se, appeals a May 12, 1995, Board of Veterans' Appeals (BVA or Board) decision upholding the validity of a debt resulting from his default on a Department of Veterans Affairs (VA) home-loan guaranty and finding that the BVA lacked jurisdiction to review the denial of his request that VA accept a deed in lieu of foreclosure [hereinafter DILF]. Record (R.) at 10. The appellant, initially represented, filed a brief and a reply brief; the Secretary filed a brief. The Court notes that the appellant is currently proceeding pro se, the Court's having granted the November 20, 1997, motion of his attorney, Michael Campilongo, Esq., to withdraw because of his employment by the U.S. government after briefing was completed. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the BVA decision in part and vacate it in part and remand several matters for further proceedings.

## I. Background

The veteran served on active duty from September 1956 to December 1959. R. at 10. In January 1979, he applied to VA for a VA home-loan guaranty in order to refinance an existing mortgage on property in Washington, D.C. (Washington property), as well as another lien of record. R. at 27–30. In

March 1979, he and his wife gave a deed of trust to Steed Mortgage Company in the amount of $70,000, and the VA-guaranteed loan was disbursed. R. at 35–40. The note was ultimately assigned to the New York Guardian Mortgage Corporation (holder) in December 1984. R. at 43–45.

On March 1, 1985, the veteran incurred his first uncured default, and on June 6, 1985, the holder filed notice with a VA regional office (RO) that the veteran's account was four months in arrears. R. at 48. The outstanding loan balance at that time was $66,786.45. *Ibid.* On July 29, 1985, the holder filed with the VARO a notice of intention to foreclose that listed the veteran's last known address as "197 Jackson Ave., Bradford, PA 16701" (Jackson Ave.). R. at 53. That same day, the RO sent a mailgram to the veteran at the Jackson Ave. address informing him of his default on the loan and the potential consequences. R. at 55–57. On August 9, 1985, the holder submitted to the RO a notice of default that documented its efforts to contact the veteran regarding his default. R. at 58.

On August 30, 1985, the veteran responded by telephone to the RO's July 29, 1985, mailgram. R. at 62–63. He stated that he had offered the holder a DILF and that he had received pertinent documents in response. *Ibid.* (A DILF refers to "[t]he procedure whereby a mortgagor/debtor reconveys his equity of redemption in the defaulted property to the mortgagee/creditee in consideration of the creditor's promise to forebear from suing on the debt or foreclosing the security". *Wells v. Brown,* 9 Vet.App. 293, 299 (1996), *aff'd,* 114 F.3d 1207 (1997) (quoting 3 RICHARD R. POWELL & PATRICK ROWAN, POWELL ON REAL PROPERTY § 469.1 (1992)).) The RO in turn advised him that he must submit to VA, inter alia, a letter explaining the reason for the default, a financial statement, and documentation of his efforts to sell the property. R. at 62–63. Shortly thereafter, an RO loan specialist sent to the veteran at the Jackson Ave. address a telegram informing him of his potential liability in the event that the holder foreclosed on the property. R. at 65. In response, the veteran sent to the RO on September 29, 1985, a mailgram

stating that he was awaiting receipt of the forms necessary to complete an application for a DILF. R. at 67. Two days later, on October 1, 1985, he contacted the RO by telephone stating that he was awaiting a financial form from the lender, and was advised by the RO to submit to the RO a written request (apparently for a DILF) accompanied by a comparison of his monthly obligations with his take-home pay. R. at 69. On October 4, 1985, he sent such a comparison to the RO. R. at 71–73.

On October 21, 1985, an RO official asked the veteran's wife by telephone why the requested financial documents needed for VA to consider a DILF request had not been received. R. at 80. She responded that the documents had been forwarded over a week earlier, and was advised by the RO to send a second copy. *Ibid.* On that same day, an RO loan specialist evaluated the case and recommended that VA deny the veteran's DILF request. R. at 82. The loan specialist noted that, despite two requests, the veteran had not submitted the required financial documents. *Ibid.* Upon completion of this evaluation, the RO informed the holder that a DILF would not be in the best interest of the government and thus advised the holder (but apparently not the veteran) to continue expeditiously with foreclosure. R. at 86. On December 5, 1985, the veteran sent to the RO from Bradford, Pennsylvania, a mailgram seeking information regarding his loan, including both its status and the amount of interest, taxes, and insurance fees he had paid on the property during the calender year. R. at 91. The veteran later asserted in sworn testimony that sometime in November or December 1985 he had moved to Buffalo, N.Y. (R. at 358), but the record on appeal (ROA) does not contain any indication that VA received notice of such a relocation. On January 7, 1986, the foreclosure trustee selected by the holder (R. at 88–89) informed the holder that it intended to foreclose on the Washington property on February 18, 1986 (R. at 94). The trustee apparently also sent a copy of this letter to the veteran at the Washington property. *See* R. at 94.

On January 14, 1986, the RO sent to the veteran at the Jackson Ave. address a letter

informing him that his loan was delinquent and that the holder intended to foreclosure on February 18, 1986. R. at 96. This letter further advised the veteran that he would be indebted to the U.S. government if the property was sold for less than the amount of the debt. *Ibid.* VA records show that, three days later, after no response was received, the RO attempted to contact the veteran by telephone at the Jackson Ave. residence but learned that the telephone number there had been disconnected. R. at 98.

VA records show that on February 4, 1986, more than three months after denial of the DILF request, VA discovered in a temporary file the aforementioned requested information that the RO had considered necessary to consider the veteran's DILF request. R. at 103. These records also show that, after finding this file, the RO reviewed the information on February 4, 1986, and determined that the newly discovered information would not have altered its decision to deny the DILF. *Ibid.*

The veteran appeared at the RO on February 5, 1986, and requested all documents pertaining to the current default and pending foreclosure, as well as information on DILFs and waivers of indebtedness. R. at 105–06. He also sent a mailgram from Buffalo on February 9, 1986, seeking Congressional assistance in enjoining VA (not the holder) from foreclosing on the property on February 18, 1986, and in convincing VA to approve his DILF request. R. at 108–09. Despite these efforts, the holder informed VA on February 20, 1986, that it had foreclosed on the property as scheduled and enclosed two copies of the holder's election to convey the property to VA. R. at 115.

After accepting custody of the property in May 1986 (R. at 124–27), VA completed a property inspection report that listed the value of the property as $80,000 (R. at 153). Based on this appraised value, VA computed the veteran's indebtedness as $9,119.06, and informed the holder that VA would be remitting this sum in satisfaction of its loan guaranty. R. at 151, 159. In a subsequent computation, VA reduced the veteran's indebtedness to $8,449.56 based on a $669.50 transfer-tax credit. R. at 161, 255.

Records from the VA Debt Management Center (VADMC) state that a collection letter informing the veteran of his indebtedness was sent on May 8, 1987, to the Jackson Ave. address but do not indicate that any response was received. R. at 387. Sometime after that date, the VADMC's records recite that it received notification of an address change for the veteran to a P.O. box in Bradford, Pennsylvania (P.O. box) and that a second collection letter was sent in June 1987 to that P.O. box. *Ibid.* However, no such letters are found in the ROA.

On August 14, 1987, VA sold the property for $80,000. R. at 177–84. Based on the net value of the property, *see* 38 U.S.C. § 3732(c)(1)(C); 38 C.F.R. § 36.4301 (1997), the veteran's total indebtedness was calculated at $9,119.06 (R. at 151), which was subsequently adjusted and ultimately determined to be $6,849.56 (R. at 161, 188). VA records state that shortly thereafter, the VADMC sent to the veteran at the P.O. box a letter advising him of the potential use of a federal salary offset as a method to recover the indebtedness. R. at 387. However, no copy of such a letter is in the ROA.

VA records recite that three additional demand letters were subsequently sent by the VADMC to the veteran at the Washington property on July 25, August 25, and September 26, 1991 (R. at 387), but no such letters are in the ROA. When neither a response was received nor the letters returned, VA records further state that on October 28, 1991, the VADMC sent to the veteran at the Washington property a letter advising him of a possible federal salary offset, but the ROA also does not contain any such letters. *Ibid.* On November 27, 1991, the VADMC sent a letter to the veteran's employer, the Federal Aviation Administration (FAA), instructing it to offset the veteran's wages (R. at 192), and VA apparently began receiving federal salary offsets from the FAA on December 27, 1991 (*see* R. at 388, 476). In addition, VA records recite that the VADMC also sent a letter, not found in the ROA, to the veteran at the Washington property informing him that his debt to VA had been reported to credit reporting agencies on December 31, 1991. R. at 388.

On February 5, 1992, a VA regional office received correspondence from the veteran, forwarded through U.S. Representative Bill Paxon's office, that contested the validity of the debt and the salary offset (R. at 194–95), and the RO certified to the BVA the issues of the validity of the debt and the appealability of the RO's denial of the DILF request (R. at 429–30). In response to several Congressional inquiries on behalf of the veteran regarding the salary offset (R. at 200, 206), an RO hearing was held on November 9, 1992 (R. at 233–52), but technological problems precluded the transcription of the full hearing, and thus it was deemed by VA to be not valid for consideration (R. at 276). In response to correspondence from VA, the veteran on December 18, 1992, registered numerous complaints about VA practices, including his difficulty in obtaining records from VA prior to this problematic hearing. R. at 264–68. On December 30, 1992, VA informed him that the FAA would cease the offset of his salary and that the entire amount seized would be returned if he won his appeal. R. at 281. VA records suggest that this amount was ultimately returned to the veteran on December 20, 1993. *See* R. at 476. A second VA hearing was held on January 19, 1993 (R. at 300–83), at which time the veteran stated that he had attempted to sell the Washington property (R. at 345, 366) but offered no written documentation of such efforts (*See* R. at 396).

A hearing before a single-member BVA travel section was held on August 9, 1993. R. at 437–67. In the May 12, 1995, BVA decision here on appeal, the Board determined that the veteran's indebtedness was validly established and, relying in part on 38 C.F.R. § 36.4323(e)(4) (1994), that the Board lacked jurisdiction to review the RO's denial of the DILF request. R. at 10. A timely appeal to this Court followed.

## II. Analysis

### A. Jurisdiction

As an initial matter, the Court must determine whether the veteran has properly filed an appeal in order to confer jurisdiction on this Court. *See Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed.Cir.1996) ("it is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits"); *Smith (Irma) v. Brown*, 10 Vet.App. 330, 332 (1997). This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393–94 (Fed.Cir.1991); *Skinner v. Derwinski*, 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which a timely Notice of Disagreement (NOD) was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Hamilton v. Brown*, 4 Vet. App. 528, 531 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed.Cir.1994).

In its December 5, 1997, and March 5, 1998, orders, the Court requested additional filings from the parties, including copies of letters reported by VA to have been sent to the veteran but that are not contained in the ROA, in order to determine both when the veteran was first notified of the existence of a VA-determined debt and when he first challenged in writing the existence thereof. Based on the parties' responses, and as conceded by VA in the RO's June 1993 Statement of the Case (R. at 411), the Court holds that the veteran was not advised of the existence of the debt until the salary offset went into effect in December 1991. Consequently, the letter received by VA in February 1992 from Representative Paxon (R. at 194–95), which VA itself treated as a valid NOD, *see* Secretary's Brief (Br.) at 2, serves as an NOD to confer jurisdiction on this Court as to both the establishment of the debt and the salary offset. *See Felton v. Brown*, 4 Vet. App. 363, 367 (1993) (Court notes that Court had previously decided that VA written note of telephone inquiry from U.S. Senator on behalf of veteran whose claim RO had denied constituted valid, jurisdiction-conferring

NOD). The Court will now proceed to the merits of the veteran's claims.

## B. Challenge as to the Validity of the Debt

■ The appellant has consistently challenged the validity of the debt that the Secretary seeks to enforce against him. Under existing caselaw, the Court has jurisdiction to review a Board decision as to the validity of a debt arising out of a VA home-loan guaranty. *Schaper v. Derwinski*, 1 Vet.App. 430, 433–34 (1991) (holding that Court has jurisdiction to review determinations by VA that veteran owes a debt to United States) (quoting *Smith (Barbara) v. Derwinski*, 1 Vet.App. 267, 272–73 (1991)). The appellant in effect challenges the validity of the debt on two different theories: First, that there were defects in the procedures by which the debt was established; and, second, that VA improperly denied his request for a DILF.

■ *1. Procedural Defects in Establishing Debt.* A VA-guaranteed home loan involves several separate documents—"the deed to the underlying property, the mortgage [and] note, and the VA guaranty"—each giving rise to different rights and responsibilities. *Wells, supra.* As guarantor of the loan, VA has two methods by which it can recover payments made on behalf of a defaulting veteran—subrogation and indemnification. *See* 38 C.F.R. § 36.4323(a), (e) (1997); *East v. Brown*, 8 Vet.App. 34, 37 (1995) (quoting *Travelstead v. Derwinski*, 1 Vet.App. 344, 346 (1991), *aff'd,* 978 F.2d 1244 (Fed.Cir.1992)); *see also Smith (Barbara),* 1 Vet.App. at 273. It is well settled that VA's right to seek indemnification exists independently from the right of subrogation. *See United States v. Shimer*, 367 U.S. 374, 387–88, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); *Carter v. Derwinski*, 987 F.2d 611, 615 (9th Cir.1993); *Vail v. Derwinski*, 946 F.2d 589, 590–91 (8th Cir.1991); *Smith (Barbara), supra.* When pursuing subrogation, VA must stand in the shoes of the private lender and comply with all applicable state law requirements for recovery. *See Boley v. Brown*, 10 F.3d 218, 221–22 (4th Cir.1993). In contrast, VA's right of indemnification is part of an overall federal program under a federal statute establishing a uniform scheme, and, consequently, when VA pursues this right, it is not bound by requirements that state law may impose on a private lender. *See Shimer, Carter, Vail, Smith (Barbara),* and *Boley,* all *supra.* Hence, in the present case, because VA is seeking indemnification under the federal statute, VA need not comply with the requirements that District of Columbia law imposes on private lenders. *See ibid.*

■ In pursuing its indemnification right here, VA, although exempt from compliance with otherwise applicable local laws, must provide constitutionally adequate notice of a pending foreclosure in order to preserve that right. *See Buzinski v. Brown,* 6 Vet. App. 360, 365 (1994) (citing *United States v. Whitney,* 602 F.Supp. 722 (W.D.N.Y.1985)); *see also East, supra* (quoting *Buzinski, supra* ). However, there are no statutory or regulatory provisions that expressly require *VA* to provide notice to a veteran-borrower in the event of a foreclosure. *See Buzinski,* 6 Vet.App. at 367. The only federal requirement as to the giving of notice to the veteran-borrower is regulatory, and it is placed on the holder and then only when the current owner of the property is not the original borrower (38 C.F.R. § 36.4317(c) (1997)). *See Buzinski, supra.* Although actual notice is always preferred, this Court has concluded that "[t]he constitutionality of a foreclosure proceeding depends not on the subjective understanding of the property owner, but on the *objective propriety of the procedures used.*" *East, supra* (emphasis added) (quoting *Buzinski,* 6 Vet.App. at 365).

■ In the present case, the Board determined that the veteran had adequate notice that his DILF request was denied and that foreclosure was imminent because it found as facts that the veteran had received constructive notice of the denial of his DILF request and actual as well as constructive notice of the impending foreclosure. R. at 18. The Court reviews such factual determinations by the Board under a "clearly erroneous" standard; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them". *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4); *see also Buz-*

*inski, supra.* Applying this standard, the Court holds that there exists a plausible basis in the ROA to support the Board's finding that VA provided the veteran with both actual and constructive notice of the pending foreclosure. The ROA indicates that the veteran appeared at the RO and was provided with actual notice of the pending foreclosure 12 days before the scheduled date. R. at 105–09; *see Boley,* 10 F.3d at 222–23 (holding that veteran had reasonable notice so as not to preclude VA from seeking indemnification when he had five days' actual notice and when no evidence suggested that he could have prevented VA's payment of guaranty that triggered his indemnity obligation). In addition, the ROA shows that VA mailed notice of the default and pending foreclosure to the veteran at his last known address approximately one month before the scheduled foreclosure. R. at 96; *cf. Vail v. Brown,* 841 F.Supp. 909, 914–15 (D.Minn. 1994) (directing that, as a matter of federal law, VA send letter at least 20 days before scheduled foreclosure to veterans who have transferred property yet remain liable on mortgage).

The Court notes that the absence of VA regulation pertaining to VA's giving notice of foreclosure appears to be inconsistent with 38 U.S.C. § 3732(a)(4)(A), because VA's providing such notice would seem to be a necessary prerequisite for VA's fulfillment of its statutory obligation under that provision to provide the veteran with information and, to the extent feasible, counseling regarding alternatives to foreclosure or to have made a determination that the mortgagee in question "has a demonstrated record of consistently providing timely and accurate information to veterans". *See* 38 U.S.C. § 3732(a)(4)(A); *see also Buzinski,* 6 Vet.App. at 369. However, there does not seem in this case to have been any prejudice to the veteran either from the lack of a regulatory requirement for VA to give notice of foreclosure to the veteran or from any possible failure on VA's part to provide him with information and counseling regarding alternatives to foreclosure, because, as we concluded above, the BVA plausibly found that the veteran had actual notice of the foreclosure and because the ROA shows that the veteran had been fully in-formed of possible alternatives to foreclosure. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). As conceded by the veteran, *see* Appellant's Br. at 4, the veteran contacted an RO in August 1985 in response to a VA mailgram and, after stating that he had requested that the holder accept a DILF, reportedly was advised by VA of the criteria for VA's approving such a request. R. at 62–63. Furthermore, VA records indicate that in October 1985 the veteran's wife spoke with VA and indicated that the veteran had already submitted the documents necessary for VA to consider his DILF request. R. at 80. Finally, on February 6, 1986, the veteran himself went to the RO and requested copies of "all documents pertaining to the current default and [foreclosure, as well as] copies of guidelines on [accepting DILFs and] waivers [of indebtedness]". R. at 105–06. Based on this record, there can be no question that prior to the foreclosure the veteran acquired knowledge about alternatives to foreclosure and vigorously pursued a DILF.

Accordingly, in view of the Court's sustaining of these BVA findings of fact, the Court holds that VA provided the veteran with constitutionally adequate notice of the impending foreclosure. *See Buzinski,* 6 Vet. App. at 365–66; *Boley* and *Vail,* both *supra.*

■ *2. Denial of the DILF.* The appellant also contends that his debt was invalidly established because VA denied his DILF request and that, contrary to the Board's determination in the decision on appeal, such a decision is appealable to the BVA and thereafter to the Court. Appellant's Br. at 9; Reply Br. at 12–13. The Secretary argues that the acceptance or denial of such requests falls solely within VA's discretion and that such decisions are thus not appealable. Secretary's Br. at 19–22. Consequently, the Court must first determine whether it has jurisdiction to review such decisions before it considers VA's denial of the veteran's request. *See Barnett* and *Smith (Irma),* both *supra.*

The determination of the Court's jurisdiction over a matter depends, in substantial part, on the Board's jurisdiction to decide an appeal from an adverse decision of a VA agency of original jurisdiction, normally a VARO, on a particular matter. In that regard, the law, in 38 U.S.C. § 511(a), directs the Secretary to

> decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependants or survivors of veterans.

38 U.S.C. § 511(a). The Board, in turn, is given jurisdiction to review "[a]ll questions in a matter which under section 511(a) of this title is subject to decision by the Secretary". 38 U.S.C. § 7104(a). Indeed, the Board's jurisdiction is mandatory; at a minimum, it must issue a decision on whether it has jurisdiction over a particular appeal. *See In the Matter of Fee Agreement of Cox*, 10 Vet.App. 361, 373 (1997) ("because section 511(a) is mandatory—'the Secretary *shall* decide'—VA is without discretion to refuse to review and issue a decision on a matter within its jurisdiction, and the Board's derivative section 7104(a) jurisdiction is likewise mandatory—'shall be subject to one review'—for an appeal properly before it") (internal citations omitted), *vacated in part on other grounds sub nom. Cox v. West*, 149 F.3d 1360 (Fed. Cir.1998) (affirming all holdings; vacated only for consideration of asserted facts occurring after this Court's opinion); *see also id.* at 1365 ("the court properly held that such a decision by the Secretary is mandatory under section 511(a) and that a claimant is then entitled to review by the Board"). The term "benefit" is defined in VA regulation as:

> any payment, service, commodity, function, or *status*, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors.

38 C.F.R. § 20.3(e) (1997) (emphasis added).

Certain veterans are entitled to receive the benefit of VA guaranties on loans made to such veterans by private lenders for, inter alia, the purchase of a dwelling to be owned and occupied by the veteran. *See* 38 U.S.C. § 3710(a)(1). In accordance with statute and regulation, a veteran will be liable to VA through either indemnification or subrogation for any monies paid by VA to the mortgagee due to default and foreclosure on a VA-guaranteed mortgage. *See* 38 U.S.C. § 3732(a)(1); 38 C.F.R. § 36.4323(a), (e). The statute provides the Secretary with authority to accept a DILF as a means of the veteran's avoiding foreclosure and incurring indebtedness. Specifically, section 3732(a)(4)(A) provides:

> (4)(A) Upon receiving a notice [of default from a lender] pursuant to paragraph (1) of this subsection, the Secretary shall—
>
> (i) provide the veteran with information and, to the extent feasible, counseling regarding—
>
> (I) alternatives to foreclosure, as appropriate in light of the veteran's particular circumstances, including possible methods of curing the default, ***conveyance of the property to the Secretary by means of a deed in lieu of foreclosure***, and the actions authorized by paragraph (2) of this subsection; and
>
> (II) what the Department of Veterans Affairs' and the veteran's liabilities would be with respect to the loan in the event of foreclosure; and
>
> (ii) advise the veteran regarding the availability of such counseling;
>
> except with respect to loans made by a lender which the Secretary has determined has a demonstrated record of consistently providing timely and accurate information to veterans with respect to such matters.

38 U.S.C. § 3732(a)(4)(A)(i)(I) (emphasis added).

Nonetheless, unlike the situation involved in *Smith (Barbara)*, 1 Vet.App. at 279, and *Malone v. Gober*, 10 Vet.App. 539, 544–45 (1997), the above statute is silent on the circumstances that would warrant a DILF and does not expressly bestow broad discretion on the Secretary to accept or deny a request for a DILF, but rather simply fails to provide factors to be considered in processing such a request. *See Tulingan v. Brown*, 9 Vet.App. 484, 487 (1996) (Court does not construe 38 U.S.C. § 6104(a), which

provides for forfeiture of VA benefits upon evidence "satisfactory to the Secretary", as bestowing unlimited, unreviewable discretion on the Secretary even though no statutory or regulatory factors or considerations are provided), *en banc review denied,* 10 Vet.App. 43 (1997) (per curiam order). The statutory reference to the Secretary's acceptance of a DILF is codified in a number of VA regulations. *See, e.g.,* 38 C.F.R. §§ 36.4283(e), 36.4320(e), 36.4323(e)(1)(v), 36.4356(b)(8), and 36.4513 (1997). Although neither the statute nor the implementing regulations appear to provide any criteria or guidance for evaluating a request for a DILF, there is some reason to believe that such guidance does exist. *See* BAXTER DUNAWAY, THE LAW OF DISTRESSED REAL ESTATE § 20.07 (1992) (referring to criteria for determining when it will be in VA's interest to approve a DILF); R. at 105 (VA form 26–8753, dated February 6, 1986, stating in this case: "Mr. Donovan came in and requested copies of all documents pertaining to the current default and F/C, *also copies of guidelines on DIL + Waivers. Info furnished as requested.*" (emphasis added)).

In the present case, the critical question is whether under sections 511(a) and 7104(a) the RO's denial of the veteran's request for a DILF is a decision on a matter "under a law that affects the provision of [VA] benefits". *See Cox,* 149 F.3d at 1365 ("[t]he relevant issue under section 511(a) is whether the decision necessarily interpreted a law that affects veterans' benefits"); *In re Fee Agreement of Cox,* 10 Vet.App. at 373 ("[s]ection 511(a) bases the Secretary's jurisdiction not upon an *actual* effect upon a *particular* claimant's benefits but upon whether the law to be interpreted is one that '*affects* the provision of [VA] benefits'"). We hold that that denial was indeed a decision under a law that affects the veteran's obligations to VA, specifically his status as a debtor to VA, and that the BVA and the Court thus have jurisdiction to review such a denial. *See* 38 C.F.R. § 20.3(e) (defining "benefit" as, inter alia, "any ... status, entitlement to which is determined under laws administered by [VA]"). As noted above, a veteran remains liable under the law for any monies paid by VA to the mortgagee due to default and foreclosure on the veteran's VA-guaranteed mortgage. *See* 38 U.S.C. § 3732; 38 C.F.R. § 36.4323(e); *see also Buzinski,* 6 Vet.App. at 364. If, however, VA grants a request for a DILF, the veteran is absolved of all obligations on the loan and thus is no longer legally liable for the amount borrowed. *See* 38 C.F.R. § 36.4323(e)(1)(v) (providing for DILF as method for VA to provide veteran with "complete" release from indebtedness). In contrast, if such a request is denied, the veteran-borrower remains liable and presumably will incur indebtedness.

In this regard, the BVA concluded that permitting the appealability to the Board of an RO decision to deny a DILF request would be both inconsistent with the regulatory scheme in 38 C.F.R. § 36.4323(e) and was specifically precluded by § 36.4323(e)(4). R. at 20. The Board was wrong in both respects, and thus its statement of reasons or bases for its conclusion in this respect was also inadequate under 38 U.S.C. § 7104(d)(1). *See Gilbert,* 1 Vet.App. at 56–57 (Board must provide statement of reasons or bases that is adequate to enable appellant to understand precise basis for Board's decision as well as to facilitate Court review); *see also Webb v. Brown,* 7 Vet.App. 122, 124 (1994) (Board must address effect of potentially applicable regulation); *Simon v. Derwinski,* 2 Vet.App. 621, 622–23 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992). Contrary to the Board's decision, § 36.4323(e)(4), which purports to render unappealable certain determinations made by VA, does not preclude appellate review of RO decisions pertaining to DILFs because that section pertains only to decisions that provide for a *partial,* rather than a complete, release of indebtedness. Moreover, the full context of the relevant regulation supports a finding that decisions pertaining to DILFs are reviewable—the explicit attempt of § 36.4323(e)(4) to render unappealable those determinations that pertain to partial release of indebtedness implies that decisions pertaining to a complete release of indebtedness, such as a DILF, *are* reviewable. *See* NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.23 (5th ed.1992) (inference that all omissions should be understood as exclusions); *Smith*

*(William)* v. *Brown*, 35 F.3d 1516, 1523 (1994) (rules of statutory construction equally applicable to interpreting regulations); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted"). Finally, this interpretation heeds the advice of Judge Plager in *Barrera v. Gober* that "we should err, if we err at all, on the side of protecting a veteran's right to the judicial review Congress has mandated". *Barrera*, 122 F.3d 1030, 1040 (Fed.Cir.1997) (Plager, J. concurring). The Court's holding regarding the inapplicability of 38 C.F.R. § 36.4323(e)(4) should not be construed as a decision supporting the viability of that section with respect to any partial release, a situation not presently in front of us and regarding which we offer no opinion.

Because the Court holds that a veteran may appeal to the Board and thence to this Court a VA decision not to accept a DILF, the veteran's claim will be remanded to the Board for adjudication of that question. Although, as noted above, the Court is not aware that VA has prescribed standards to guide the exercise of its discretion when determining whether to accept or deny a DILF, *but cf.* DUNAWAY, *supra;* R. at 105, VA is required by statute, at both the RO and BVA stages, to provide a claimant with an adequate statement of its reasons for such a decision. 38 U.S.C. §§ 5104(b), 7104(d)(1); *see Crippen v. Brown*, 9 Vet.App. 412, 420 (1996); *Thompson (Charles) v. Brown*, 8 Vet. App. 169, 175 (1995), *mot. for recons. granted*, 8 Vet.App. 430 (1995); *Simon* and *Gilbert*, both *supra.* Here, neither the RO nor the Board provided an explanation of the reasons for their denials of the veteran's DILF request.

As to the proceedings on remand, the Court notes that the Secretary no longer has an option now, more than ten years after foreclosure, to accept a DILF, and thus any remedy for a wrongful denial of a DILF would necessarily go to the establishment, release, or waiver of the debt. Accordingly, the Board must address two questions on remand and include an adequate statement of the reasons or bases for its decision: First, did the RO err in not granting a DILF in this instance? Furthermore, because neither party has called to the Court's attention any material in VA manuals or circulars with respect to the exercise of the DILF authority, the Board should describe with particularity any such applicable provisions dealing with that authority (*cf.* DUNAWAY, *supra*), including whether such provisions are regulatory in nature, and determine the extent to which they were followed. *See Cohen (Douglas) v. Brown*, 10 Vet.App. 128, 138–39 (1997); *Fugere v. Derwinski*, 1 Vet.App. 103, 106–07 (1990), *aff'd*, 972 F.2d 331 (Fed.Cir. 1992). Second, assuming that it were to be determined that the RO erred in denying a DILF, does the Secretary have the authority to release the indebtedness now, to declare that the indebtedness was wrongfully established, or to waive the debt, *see* 38 U.S.C. §§ 3713, 3732(a)(4), 5302; 38 C.F.R. §§ 1.964–66, 36.4285(e), 36.4323(e)(1)(v) (1997); *see also* 38 U.S.C. § 503; 38 C.F.R. § 2.7(1997)?

In addition, the Secretary has moved for remand to the Board for recalculation of the amount of the debt in light of the adoption of new criteria for calculating the net valuations of foreclosed properties that should be applied to any indebtedness of this veteran on the guaranty in question. *See* VA Veterans Benefit Administration Circular 20–91–8, *Review of Net Value Miscalculation* (May 14, 1991) (VBA Circular); Secretary's Br. at 35–36. The appellant has agreed on this point. *See* Reply Br. at 6, 18–19. The Secretary also asks the Court to direct the Board to obtain copies of this opinion and incorporate it into the veteran's claims folder for appropriate consideration in subsequent decisions on this claim. Secretary's Br. at 35–36. The Court will grant the Secretary's motion for remand for recalculation under the VBA Circular (if VA sustains a debt in the remand proceedings) and for the Board to include in the veteran's claims file a copy of this opinion.

Our dissenting colleague (dissenting on this DILF question only) puts forth an interesting analysis to support his conclusion that VA's decision whether or not to approve a

DILF is not one subject to judicial review, or indeed to BVA review. Fatal to that analysis is what it fails to say or discuss. That is, nowhere does the dissenting opinion on the DILF question mention (let alone discuss) the pertinent statutory provisions regarding the Board's (and thus this Court's) jurisdiction. As noted above, those provisions, 38 U.S.C. § 511(a) and 7104(a), have been authoritatively construed by the U.S. Court of Appeals for the Federal Circuit and by this Court as *requiring* that the Board render a decision on any question "under a law that affects the provision of benefits by the Secretary to veterans", 38 U.S.C. § 511(a), where an RO has decided that question. *See Cox v. West* and *In the Matter of Fee Agreement of Cox,* both *supra.* The judicial review provisions in chapter 72 of title 38, United States Code, contain no exception for decisions that are discretionary with the Secretary. Moreover, our dissenting colleague fails to deal with considerable caselaw of this Court that contradicts his position: *See Tulingan, supra; see also Meakin v. West,* 11 Vet.App. 183, 186 (1998) (BVA has jurisdiction to review Secretary's determination as to whether requirements for treatment at VA expense in non-VA facilities have been met). Most particularly, in *Scott (Charles) v. Brown,* 7 Vet. App. 184 (1994), a unanimous decision in which our dissenting colleague joined as a member of the panel, this Court held that the exercise of a discretionary authority to grant an extension of time for the filing of an NOD "for good cause shown", 38 C.F.R. § 3.109(b), was a decision committed "to the sole discretion of the Secretary", *id.* at 189 (quoting *Corry v. Derwinski,* 3 Vet.App. 231, 235 (1992)), and that, although there were no standards or guidelines prescribed for its exercise, "[t]he exercise of such a discretionary authority as to which regulations have been prescribed is subject to review by this Court to determine whether the exercise of discretion was made … 'in an arbitrary or capricious manner' ". *Ibid* ( quoting *Smith (Barbara),* 1 Vet.App. at 279). The Court then went on to "hold[ ] that the Board's finding on this matter articulates 'a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." ' " *Id.* at 190 (quoting

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). The same standard articulated in *Scott* and *Smith (Barbara)* would apply to judicial review of a BVA decision refusing to approve a DILF. The dissenting opinion has in effect aligned itself with a separate opinion, and not the Court's holding in *Tulingan,* in its insistence that the Board need not review the Secretary's refusal to exercise his DILF authority in this case. *See Tulingan,* 9 Vet.App. at 491 (Farley, J., concurring) (stating that an inadequate statement of reasons or bases would be at most nonprejudicial error and not a basis for judicial review).

### C. VA's Collection Activities

By regulation, VA has established a mechanism for the offset of federal salary in order to recoup guaranty payments it has made on behalf of a VA home-loan guaranty beneficiary. 38 C.F.R. § 1.980–1.994 (1997). Debt collection by such offset may not occur without the Secretary's providing to the employee-debtor, inter alia, notice of the existence of the debt; the amount and circumstances giving rise to the debt; the amount, frequency, approximate beginning date, and duration of the offset deduction; and the employee's right to appeal. *See* 38 C.F.R. § 1.982–1.983. If the employee elects to appeal, a hearing will be provided if requested (§ 1.985), and VA must make available to the employee the records pertaining to the debt (§ 1.989). In addition, if the employee appeals, collection of the debt by salary offset will be suspended until the appeal is decided. *See* 38 C.F.R. § 1.982(d).

The ROA suggests that VA did not comply in several respects with its own regulatory requirements for offsetting the veteran's salary. Although VA records indicate that letters informing the veteran of the existence of his debt and requesting payment were sent to him at the Jackson Ave. address on May 8, 1987, and to the P.O. box on June 26, 1987, and August 21, 1987 (R. at 387), the ROA does not contain any such letters. Moreover,

although VA records also indicate that three additional demand letters were sent to him at the Washington property in 1991 (R. at 387), the ROA also does not contain any such letters. Consequently, the ROA does not demonstrate that VA provided the veteran with proper notice pursuant to 38 C.F.R. §§ 1.982 and 1.983.

In addition to this apparent notice deficiency, VA apparently committed other errors relating to the offset of the veteran's salary. The veteran appealed the offset of his salary on January 11, 1992 (R. at 491), yet VA apparently did not cease the offset until more than a year later, on January 6, 1993 (see R. at 476), despite the regulation requiring suspension of a salary offset once it is appealed (see 38 C.F.R. § 1.982(d)). In addition, VA records show that VA apparently did not reimburse the veteran until December 20, 1993, almost a year after suspension of the deductions (see R. at 476), despite VA's regulatory obligation to return promptly sums improperly deducted from a federal employee's salary by offset (38 C.F.R. § 1.994).

■ Notwithstanding VA's apparent deficient compliance with its own regulations in collecting an asserted debt by offset, VA's subsequent remedial action has removed these offset questions as justiciable matters in this appeal. In order for this Court to have jurisdiction, there must be a case or controversy, which requires in part that the Court be capable of redressing the alleged injury through specific relief. *See Mokal v. Derwinski,* 1 Vet.App. 12, 15 (1990) (Court adopts Article III case-or-controversy requirement to determine Court's jurisdiction); *see also Waterhouse v. Principi,* 3 Vet.App. 473, 474 (1992). In the present case, the appellant has conceded that the Secretary has reimbursed him for the full amount wrongfully offset from his salary (R. at 476; Reply Br. at 8), and VA regulations do not provide for any payment of interest on sums improperly withheld but ultimately refunded to a veteran (see 38 C.F.R. § 1.994). In addition, VA records state that VA has asked consumer credit agencies not to register the veteran's indebtedness to VA. R. at 476. Hence, VA's own remedial action has now provided the necessary relief for any past

wrongs. As to any future VA collection efforts, such an issue is not ripe for a ruling by the Court because the veteran cannot claim an injury based on purely speculative future misconduct. *See In the Matter of Fee Agreement of Stanley,* 9 Vet.App. 203, 209 (1996) (holding that standing requires party to show actual or threatened injury). Nor will the Court assume that the Secretary would repeat any errors VA committed previously in attempting to collect any indebtedness to it from the veteran. Indeed, it is not yet known whether the veteran will even be indebted to VA following remand, let alone the methods VA might employ to collect any such debt.

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court affirms in part the May 12, 1995, BVA decision (as to the determination that the debt was validly established in terms of compliance with procedural requirements) and vacates the decision in part and remands two matters (the DILF matter and, if an indebtedness is established, recalculation of the amount of indebtedness) for expeditious further proceedings and expeditious adjudication (specifically addressing the three questions delineated in part II a.2., above), supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 3732, 5104(b), 7104(a), (d)(1), consistent with this opinion and in accordance with applicable law and regulation, including section 302 of the Veterans' Benefits Improvements Act of 1994, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded matters. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court grants the Secretary's motion for recalculation under the VBA Circular if an indebtedness is established and for incorporation of this opinion into the veteran's claims file on remand. A final decision by the Board following the remand herein ordered will constitute a new decision that, if

adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

## AFFIRMED IN PART; VACATED AND REMANDED IN PART.

HOLDAWAY, Judge, concurring in part and dissenting in part:

I dissent from the majority's holding that the Secretary's decision not to approve the veteran's proposed deed in lieu of foreclosure is a matter that can be reviewed by appellate authority. Review of the relevant statutes and regulations establish that the decision is committed to agency discretion.

The Secretary is authorized to provide home loan guarantees to eligible veterans. See 38 U.S.C. §§ 3702, 3703. In the event of a default on a VA guaranteed loan, the mortgagee is required to notify VA of the default. See 38 U.S.C. § 3732(a)(1); 38 C.F.R. § 36.4316(a) (1997). The mortgagee must also provide VA notice thirty days before initiating action to liquidate real property securing a VA guaranteed loan. See 38 U.S.C. § 3732(a)(2), (c)(3)(A); 38 C.F.R. § 36.4317 (1997). Within thirty days of the mortgagee's notice of intent to liquidate the secured property, the Secretary may, at his option, require the mortgagee to assign the loan and security to the Secretary in exchange for payment of the unpaid balance of the loan, including accrued interest. 38 U.S.C. § 3732(a)(2); 38 C.F.R. § 36.4318(a) (1997).

There is no specific statutory provision that authorizes the Secretary to accept from the veteran a conveyance of the secured property through a deed in lieu of foreclosure. The statutory section quoted by the majority states that the Secretary must provide the veteran with "information and, to the extent feasible, counseling" about alternatives to foreclosure; "conveyance of the property to the Secretary by means of a deed in lieu of foreclosure" is listed as an example of "alternatives to foreclosure." 38 U.S.C. § 3732(a)(4)(A). That provision does not provide authority or guidance with respect to

the Secretary's recourse after a veteran defaults. However, the Secretary is granted broad discretionary powers relating to home loan guarantees, including power to "pay, compromise, waive[,] or release any right, title, claim, lien or demand, however acquired, including any equity or any right of redemption." 38 U.S.C. § 3720(a)(4). He is also empowered to "take title to[ ] property, real, personal[,] or mixed." The Secretary has prescribed that when a veteran proposes to convey the secured property to the mortgagee to avoid foreclosure, the Secretary must consent, in advance, to the terms of the conveyance. See 38 C.F.R. § 36.4320(c) (1997). The mortgagee can elect to convey the property received from the veteran to the Secretary. See 38 C.F.R. § 36.4320(g), (h).

Before a liquidation sale, a VA official "may" approve a complete release of the Secretary's right to collect a debt resulting from a home loan guarantee. See 38 C.F.R. § 36.4323(e)(1) (1997). The regulation requires that to approve a complete release, the VA official must first determine, inter alia, that "the obligor completes, or the Secretary is enabled to authorize, an action which [would] reduce[ ] the [g]overnment's claim liability sufficiently to offset the amount of the anticipated indebtedness" that would likely be collected by VA after a liquidation sale. See id. at § 36.4323(e)(1)(v). The regulation states that one example of such an action would be "termination of the loan by means of a deed in lieu of foreclosure." See id.

In this matter, the Secretary did not approve the veteran's request to convey a deed in lieu of foreclosure to the holder of his mortgage. See 38 C.F.R. § 36.4320(c). There are no statutory or regulatory guidelines established for how or when the Secretary would be permitted to approve a conveyance of certain secured property to the holder of the mortgage from the veteran. While the VA loan guarantee program is established to assist veterans, the Secretary also has a fiduciary responsibility to mitigate losses to the public fisc. The decision to approve an agreement between a mortgagee and a veteran to·accept a deed in lieu of

foreclosure is initially a business decision made in the best interest of the government.

The Court has held that a determination by the Secretary that was committed entirely to his discretion is not reviewable by the Board or this Court. *See Malone v. Gober,* 10 Vet.App. 539, 544 (1997) (holding that statutory language that the Secretary "may" provide nursing care, where the language did not establish "how or when to exercise [his] authority," is a decision committed to the absolute discretion of the Secretary); *Willis v. Brown,* 6 Vet.App. 433, 435–36 (1994) (holding that the Secretary's discretionary authority in selecting a fiduciary was not reviewable by the Board); *Darrow v. Derwinski,* 2 Vet.App. 303, 305–06 (1992) (holding that the Board did not have jurisdiction to review the Secretary's equitable powers under 38 U.S.C. § 503(a)). The Supreme Court has explained when a decision is committed to agency discretion:

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the *statute* is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decision to the agency's judgment *absolutely.*

*Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (emphasis added). This Court has stated that "an all-purpose, general 'abuse of discretion' standard" does not exist because it is impossible to review an agency action for an abuse of discretion where there are no "'judicially manageable standards.'" *Malone,* 10 Vet. App. at 544 (quoting *Heckler, supra*); *Darrow,* 2 Vet.App. at 306 (same).

Review of the statutory and regulatory language, in this matter, indicates that the Secretary's decision to approve or reject a deed in lieu of foreclosure is committed to his discretion and not reviewable by the Board or this Court. *See Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (stating that whether a decision is committed to agency discretion "requires careful examination of the statute on which the claim of agency illegality is based"); *Cf.*

*First Family Mortg.Corp. of Florida v. Earnest,* 851 F.2d 843 (6th Cir.1988) (holding that a determination by the Secretary, under 38 U.S.C. § 1816 (1988) (now § 3732(a)(1), (2)), to pay the holder of the mortgage and accept an assignment of a loan and security was not reviewable because the decision was committed to agency discretion). First, there is no law that mandates that the Secretary take any action at all, aside from providing information and counseling, to assist a veteran in avoiding foreclosure. The veteran is entirely responsible for the consequences of defaulting on his obligation. Second, there are absolutely no standards for reviewing the Secretary's determination of whether a deed in lieu of foreclosure would be warranted in a particular situation. The majority admits that there are no guidelines. *See* Part II, B, 2, *supra,* at 489 ("Neither the statute nor the implementing regulations ... appear to provide any criteria or guidance for evaluating a request for a [deed in lieu of foreclosure]."); *Id.* at 490 (stating that "the Court is not aware that VA has prescribed standards to guide the exercise of its discretion when determining whether to accept or deny a [deed in lieu of foreclosure]"). Because there is no law to apply in reviewing the Secretary's rejection of a proposed conveyance of a deed in lieu of foreclosure, the decision is committed to the Secretary's discretion, and the Board does not have authority to review it. *See Heckler, Malone, Willis,* and *Darrow,* all *supra.*